UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
In re Steven Koehler,

                                Chapter 13
                                Case No. 08-35493

            Debtor
------------------------------------X Adv Proc No.
Steven Koehler,

                                COMPLAINT

                    Plaintiff,

        -against-

Wells Fargo Bank, NA, as Trustee for
Barclays Capital Real Estate, Inc.
dba HomEq Cash Control,

                  Defendant.
------------------------------------X

**COMPLAINT PURSUANT TO 11 U.S.C. Bankruptcy Rule 3007 and Rule 7001 and 11 U.S.C. § 105 TO EXPUNGE PROOF OF CLAIM AND REDUCE AREARS to ZERO**

    Steven Koehler, debtor and plaintiff herein, by and through his attorney, Michael H. Schwartz & Associates, P.C., represents as follows:

<u>JURISDICTION AND VENUE</u>

    1.  This adversary proceeding is brought pursuant to **Bankruptcy Rule 3007 and Rule 7001 and 11 U.S.C. § 105**. It is a core proceeding under 28 U.S.C. §§157 and arises in the Chapter 13 case of the Debtor now pending before this Court. Accordingly, this Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334 and §157.  Venue is proper in this district pursuant to 28 U.S.C. §1409(a).

2. The debtor and plaintiff herein is an individual who resides at 84 Village Mills, Haverstraw, New York.

3. The debtor owns the real property located at 25 Hamilton Road, Hopewell Junction, New York.

4. On or about December 13, 2004 Plaintiff borrowed the sum of $322,500.00 from Argent Mortgage, LLC. A copy of the mortgage is attached as Exhibit A.

5. Defendant Wells Fargo Bank, NA as alleged Trustee for Barclays Capital Real Estate, Inc. dba HomEq Cash Control(hereinafter "Wells Fargo") is a foreign corporation with its principal place of business at 4837 Watt Avenue, Suite 200, North Highlands, CA 95660.

6. What ever connection Wells Fargo or Barclay's Capital Real Estate has to the debtor is unknown except that Wells Fargo claims to be the trustee under a Pooling and Servicing Agreement Dated as of February 1, 2005 Asset backed Pass-through Certificate Series WHQ1. See summons and complaint and foreclosure complaint attached as Exhibit B.

7. On April 29, 2008 Wells Fargo filed a Proof of Claim in the sum of $378,790.67. The Promissory Note to Argent is attached to the proof of claim. Please see Exhibit C.

8. The proof of claim states that the mortgage payment is $3,793.04 for the months of December 1, 2006 through January 1, 2008 and $4,190.70 thereafter.

9. Paragraph 3 of the Promissory Note states that the monthly payment is $2,592.59 through December 31, 2007 at which time it adjusts upward based on the then current LIBOR.

10. The lender has taken out forced placed insurance.

11. The debtor has had property insurance without lapse since the loan from Argent.

12. The lender has intentionally and falsely charged the debtor for the forced place insurance.

13. The Proof of Claim alleges $40,739.08 in interest owed.

14. The Proof of Claim alleges $14,239.53 in Escrow balance owed.

15. Upon information and belief the amount of the interest and escrow balance is incorrect and false.

16. The Proof of Claim seeks $1,595.00 in prior petition fees and costs.

17. In the prior Chapter 13 case, the attorney for the lender only filed a Notice of Appearance, a needless objection to the plan and a lift stay motion. A copy of the docket sheet is attached as Exhibit D.

18. The Proof of Claim is also seeking to charge the debtor for prep petition attorney fees and costs of $3,543.85, other amounts and charges in the sum of $258.50, late charges and NSF fees in the sum of $119.62.

19. Thee amounts in paragraphs 14 through 19 above are unsubstantiated and unearned.

20. In the Proof of claim filed by Wells in the first Chapter 13 case on August 15, 2007, some 8 months prior to the current proof of claim:

a) the alleged interest owed then was $17,371.40 <u>less</u> than is alleged to be owed in the current proof of claim;

b) the alleged late charges in the first proof of claim were $295.18 <u>more</u> than in the current proof of claim;

c) the pre petition attorney fees in the first proof of claim were $979.92 <u>more</u> than in the current proof of claim;

d) the pre petition escrow advances were $9,786.37 <u>less</u> than in the current proof of claim.

e) the alleged other amounts for appraisal fees and other charges was 367.75 <u>more</u> than in the current proof of claim.

21. Wells Fargo appears to be picking numbers out of a hat.

22. Finally in the current proof of claim contains a paragraph allowing claimant to charge the debtor any and all fees and expenses it desires without any prior court approval.

23. In the proof of claim in the prior case the same sort of fees and expenses were requested <u>but only subject to Court approval</u>.

24. Apparently Wells Fargo has created a new rule

contrary to this Court's prior holdings.

WHEREFORE, Plaintiff demands judgment against the
Defendant expunging the proof of claim and determining the
arrears to be zero and resetting the loan to current status.

_____
Michael H. Schwartz
Michael H. Schwartz & Assoc, PC
One Water Street
White Plains, NY 10601
(914) 997-0071

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X    Chapter 13
In re Steven Koehler,                      Case No. 08-35493


                    Debtor                 Affidavit of Service
-------------------------------------X
Steven Koehler,

                         Plaintiff(s),     Adv Proc No.

           -against-

Wells Fargo Bank, NA, as Trustee for
Barclays Capital Real Estate, Inc.
dba HomEq Cash Control,

                    Defendant(s).
-------------------------------------X


State of New York          }
                           : ss
County of Westchester:     )

     I, Marie Valentin, being duly sworn, deposes and says
that I am, and at all times during the service of process was,
not less than 18 years of age and not a party to the matter
concerning which service of process was made. I further
certify that the service of the attached Complaint was made
on *May 30, 2008* at:

     by: mail service, regular, first class United States
mail, postage fully pre-paid, addressed to the persons and
addresses following:

United States Trustee
Office of United States Trustee
74 Chapel Street
Albany, New York 12207

Jeffrey L. Sapir, Esq.
399 Knollwood Road
White Plains, NY 10603

Rosicki, Rosicki & Associates, P.C.
51 E. Bethpage Road
Plainview, New York 11803

President via certified mail rrr
Wells Fargo Bank NA
As trustee Barclays Capital Real Estate, Inc.
Dba HomEq Cash Control
4837 Watt Avenue, Suite 200
North Highlands, CA  95660

(address on Proof of Claim)

Marie Valentin

Sworn to before me this
___30th___ day of _May_____, 2008

Notary Public

AMY RADAK
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01RA6118698
QUALIFIED IN WESTCHESTER COUNTY
COMMISSION EXPIRES 11/15/2008

*East Fishkill*
*6458-04-649376*

iO 323 089326   PP052C
68150234

(65) 30'
630
3200
3703

Return To:
Argent Mortgage
Company, LLC
P.O. Box 5047 Rolling
Meadows, IL 60008

Prepared By:Argent Mortgage Company, LLC
Beverly Sewell
333 Westchester Avenue,
1st Floor
White Plains, NY 10604

———————————————[Space Above This Line For Recording Data]———————————————

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated December 13, 2004
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." STEVEN C. KOEHLER



HQ0323089326RMG R1   0068150234

whose address is 25 HAMILTON ROAD, HOPEWELL JUNCTION,NY 12533
sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender." Argent Mortgage Company, LLC

will be called "Lender." Lender is a corporation or association which exists under the laws of
Delaware                              . Lender's address is One City Boulevard West
Orange, CA 92868

0068150234 - 9604

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3033 1/01

VMP-6(NY) (0005)
Page 1 of 17                    Initials: _SK_
VMP MORTGAGE FORMS - (800)521-7291            12/10/2004 1:16:03 PM

# KEY LAND SERVICES, INC.

**As Agent For Commonwealth Land Title Insurance Company**
**1110 South Avenue**
**Staten Island, NY 10314**
**Tel: (718) 889-1515 Fax: (718) 889-1535**

## Schedule A Description

Title Number **K040404**                                                                 Page    1

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of East Fishkill, County of Dutchess and State of New York, bounded and described as follows:

BEGINNING at a point on the East side of the Hamilton Road at the Northwest corner of a parcel heretofore conveyed to Reinhold and Matilda Schimanke by deed dated June 11th 1963 and recorded in the Dutchess County Clerk's Office on July 8th 1963 in Liber 1104 of Deeds at page 530; Thence Along the East side of Hamilton Road North 19 degrees 28' East 201.80 to land now or formerly of Murphy; Thence Along lands now or formerly of Murphy South 70 degrees 32' East 300 feet to a point; Thence along lands of the Grantor South 19 degrees 28' West 201.80 feet to the Northeast corner of the lands of Schimanke; Thence along lands of Shimanke North 70 degrees 32' West 300 feet to the point or place of BEGINNING.

(D) "Note." The note signed by Borrower and dated December 13, 2004          , will be called
the "Note." The Note shows that I owe Lender three hundred twenty-two thousand five
hundred and 00/100

                                        Dollars (U.S. $322,500.00                    ) plus interest
and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay
the debt in full by January 1, 2035                                                                    .

(E) "Property." The property that is described below in the section titled "Description of the Property,"
will be called the "Property."

(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and
late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of
Rights in the Property" sometimes will be called the "Sums Secured."

(H) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called
"Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable, judicial opinions will be called "Applicable Law."

(J) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(K) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than
by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers
(where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM)
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(M) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of
damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under
the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid
Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the
Property. A taking of the Property by any governmental authority by eminent domain is known as
"Condemnation."

(N) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the
nonpayment of, or default on, the Loan.

(O) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the
Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(P) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same subject
matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are
imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally
related mortgage loan" under RESPA.

0068150234 - 9604
Initials: _____

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at 25 HAMILTON ROAD

[Street]

HOPEWELL JUNCTION        [City, Town or Village] , New York 12533        [Zip Code].

This Property is in DUTCHESS        County. It has the following legal description: LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

0068158234 - 9604

Initials: _____

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

00681502349604

Initials:

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a loss reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Funds." I will pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments and Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

0068158234 9604

Initials: _____

-6(NY) (0005)        Page 6 of 17        12/10/2004 1:16:03        Form 3033 1/01

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to, earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c)

Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) **Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) **Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

0068159234-9604
Initials:

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

0068150234-9604
Initials: [handwritten]

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

0068150234 - 9604

Initials: _____

VMP-6(NY) (0005)                   Page 12 of 17      12/10/2004 1:16:03       Form 3033 1/01

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice will also contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time

0068150234-9604
Initials: _____

period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to

0068159234-9604

Initials: _____

the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

> (1) The promise or agreement that I failed to keep or the default that has occurred;
>
> (2) The action that I must take to correct that default;
>
> (3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;
>
> (4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;
>
> (5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and
>
> (6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

0068158234 9604

Initials:

VMP-6(NY) (0005)    Page 15 of 17    12/10/2004 1:16:03    Form 3033 1/01

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____          _____(Seal)
                                          STEVEN KOEHLER              -Borrower


_____          _____(Seal)
                                                                     -Borrower


_____(Seal)       _____(Seal)
                    -Borrower                                        -Borrower


_____(Seal)       _____(Seal)
                    -Borrower                                        -Borrower


_____(Seal)       _____(Seal)
                    -Borrower                                        -Borrower


0068150234 - 9604

VMP-6(NY) (0005)          Page 16 of 17    12/10/2004 1:16:03 PM  Form 3033 1/01

**STATE OF NEW YORK,** DUTCHESS **County ss:**

On the ___13TH___ day of DECEMBER, 2003, before me, the

          Day                                   Month/Year

undersigned, a notary public in and for said state, personally appeared

STEVEN C. KOEHLER

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the persons upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

Tax Map Information 6458-04-649378-0000

Jaime L. Guli
Notary Public of State of New York
01GU6062172
Qualified Richmond County
Valid from 07/30/2001 to 07/30/2005



ESCROW NO.:    604178TM
DATE     :    March 29 2005

"EXHIBIT A"
LEGAL DESCRIPTION

013-28-100-012 & 013-28-100-018

The South 450 feet of the North 807 feet of the East 1/3 of the West 1/2 of
the East 1/2 of the Northwest 1/4 of Section 28, T5N, R1E, Woodhull
Township, Shiawassee County, Michigan.

AND
Also a part of the East 1/2 of the Northwest 1/4 of Section 28, T5N, R1E,
Woodhull Township, Shiawassee County, Michigan, described as beginning on
the West 1/8 line of said section at a point which is 382 feet South of the
Northwest corner of said East 1/2 of the Northwest 1/4 of said Section 28;
thence North along the 1/8 line 25 feet; thence East parallel with the North
line of said section a distance approximately 442 feet to the East line of
the West 2/3 of the West 1/2 of the East 1/2 of the Northwest 1/4 of said
Section 28; thence South along said line 115 feet and thence Northwesterly
to the point of beginning.

3139267
Page: 20 of 20
04/19/2005 01:45P
Lori S. Kimble - Shiawassee Co. M
L-1077 P-345

2(57)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS
--------------------------------------------------------------------------x

WELLS FARGO BANK, NA AS TRUSTEE UNDER
POOLING AND SERVICING AGREEMENT DATED AS
OF FEBRUARY 1, 2005 ASSET BACKED PASS-
THROUGH CERTIFICATES SERIES 2005 WHQ1,

Index No.: 07-977

D/O/F: 2/20/07

**SUMMONS**

Plaintiff,

-against-

THE BASIS OF VENUE IS
THAT THE PROPERTY IS
SITUATED IN SAID
COUNTY

STEVEN KOEHLER AKA STEVEN C. KOEHLER; "JOHN
DOES" and "JANE DOES", said names being fictitious,
parties intended being possible tenants or occupants of
premises, and corporations, other entities or persons who
claim, or may claim, a lien against the premises,

Defendants.
--------------------------------------------------------------------------x

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the Complaint in this action, and to serve
a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice
of Appearance on the Plaintiff's Attorneys within twenty (20) days after the service of this
Summons, exclusive of the day of service, where service is made by delivery upon you
personally within the State, or within thirty (30) days after completion of service where service is
made in any other manner, and in case of your failure to appear or answer, judgment will be
taken against you by default for the relief demanded in the complaint.

The following notice is intended only for those defendants who are owners of the
premises sought to be foreclosed or who are liable upon the debt for which the mortgage stands
as security.

**YOU ARE HEREBY PUT ON NOTICE THAT WE ARE ATTEMPTING TO COLLECT
A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.**

The present amount of the debt as of the date of this summons: $332,172.92 consisting of
principal balance of $318,501.57 plus interest of $9,502.48, escrow/impound shortages or credits
of $2,258.82, late charges of $155.55; Broker's Price Opinion, inspection and miscellaneous
charges of $334.50; attorney fee $925.00 and title search $495.00. Because of interest and other
charges that may vary from day to day, the amount due on the day you pay may be greater.
Hence, if you pay the amount shown above, an adjustment may be necessary after we receive the
check, in which event we will inform you.

The name of the creditor to whom the debt is owed: WELLS FARGO BANK, NA AS TRUSTEE UNDER POOLING AND SERVICING AGREEMENT DATED AS OF FEBRUARY 1, 2005 ASSET BACKED PASS-THROUGH CERTIFICATES SERIES 2005 WHQ1.

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt hereof, the debt will be assumed to be valid by the herein debt collector.

If you notify the herein debt collector in writing within thirty (30) days after your receipt hereof that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of any judgment against you representing the debt and a copy of such verification or judgment will be mailed to you by the herein debt collector.

Upon your written request within said thirty day period, the herein debt collector will provide you with the name and address of the original creditor if different from the current creditor

Note: Your time to respond to the summons and complaint differs from your time to dispute the validity of the debt or to request the name and address of the original creditor. Although you have as few as 20 days to respond to the summons and complaint, depending on the manner of service, you still have 30 days from receipt of this summons to dispute the validity of the debt and to request the name and address of the original creditor.

TO THE DEFENDANTS, except STEVEN KOEHLER AKA STEVEN C. KOEHLER: The Plaintiff makes no personal claim against you in this action.

TO THE DEFENDANTS: STEVEN KOEHLER AKA STEVEN C. KOEHLER: If you have obtained an order of discharge from the Bankruptcy court, which includes this debt, and you have not reaffirmed your liability for this debt, this law firm is not alleging that you have any personal liability for this debt and does not seek a money judgment against you. Even if a discharge has been obtained, this lawsuit to foreclose the mortgage will continue and we will seek a judgment authorizing the sale of the mortgaged premises.

Dated: February 9, 2007
　　　　Plainview, New York

Danielle Mastriano, Esq.
**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Plaintiff
51 E. Bethpage Road
Plainview, NY 11803
Phone: 516-741-2585

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS

------------------------------------------------------------------------X

WELLS FARGO BANK, NA AS TRUSTEE UNDER
POOLING AND SERVICING AGREEMENT DATED AS
OF FEBRUARY 1, 2005 ASSET BACKED PASS-
THROUGH CERTIFICATES SERIES 2005 WHQ1,

Index No.: 07-977

D/O/F: 2/20/07

**VERIFIED COMPLAINT**

Plaintiff,

-against-

STEVEN KOEHLER AKA STEVEN C. KOEHLER; "JOHN
DOES" and "JANE DOES", said names being fictitious,
parties intended being possible tenants or occupants of
premises, and corporations, other entities or persons who
claim, or may claim, a lien against the premises,

Defendants.

------------------------------------------------------------------------X

Plaintiff, by its attorney, ROSICKI, ROSICKI & ASSOCIATES, P.C., complaining of
the Defendant(s) alleges, upon information and belief as follows:

1.     At all times hereinafter mentioned, plaintiff WELLS FARGO BANK, NA AS
TRUSTEE UNDER POOLING AND SERVICING AGREEMENT DATED AS OF
FEBRUARY 1, 2005 ASSET BACKED PASS-THROUGH CERTIFICATES SERIES 2005
WHQ1 was and still is duly organized and existing under the laws of the State of NORTH
CAROLINA .

2.     At all times hereinafter mentioned, the defendants were, and still are, residents,
corporations and/or bodies politics, duly authorized to reside and/or exist in and under the laws
of New York State.

3.     On or about December 13, 2004, STEVEN KOEHLER AKA STEVEN C.
KOEHLER executed and delivered to ARGENT MORTGAGE COMPANY, LLC. , a certain
note bearing date that day, whereby STEVEN KOEHLER AKA STEVEN C. KOEHLER
covenanted and agreed to pay the sum of $322,500.00, which sum, with interest on the unpaid
balance thereof, to be computed from the date of said note, at a rate variable in accordance with
the aforesaid instrument, with the initial rate being 8.990 percent per annum, or such other
adjusted rate as provided for in said agreement, by payments of $2,592.59 on February 1, 2005
and thereafter in payments of $2,592.59 on the like date of each subsequent month subject to
change in accordance with changes in interest rate, until said note is fully paid, except that the
final payment of principal and interest remaining due, if not sooner paid, shall become due and
payable on January 1, 2035.

4.     As collateral security for the payment of said indebtedness, the aforesaid defendant(s) STEVEN KOEHLER AKA STEVEN C. KOEHLER , also executed, acknowledged and delivered to ARGENT MORTGAGE COMPANY, LLC. , a mortgage dated December 13, 2004 and recorded in the County of Dutchess on March 7, 2005 in DOCUMENT 01-2005-4014 of Mortgages.  The mortgage tax was duly paid.  The aforesaid instrument(s) were thereafter assigned to plaintiff by assignment(s). Plaintiff is still the owner and holder of the aforementioned instruments.

Said mortgaged premises being known as and by street address:

25 Hamilton Road, Hopewell Junction, NY 12533, bearing tax map designation:

Section:  6458 Block:  04 Lot(s):  64378

which premises are more fully described in Schedule "A," annexed hereto and made a part hereof.

5.     Said premises are subject to covenants, restrictions, easements of record, prior mortgages and liens, and amendments thereto, if any; to any state of facts an accurate survey may show; railroad consents and sewer agreements, and to utility agreements, municipal and governmental zoning, rules, regulations and ordinances, if any.

6.     The total monthly payment due as of default date to plaintiff is $3,114.11.

7.     That the Mortgagors, their successors, assigns and/or transferees, have failed to comply with the terms and conditions of said above named instrument[s] by failing or omitting to pay the installment which became due and payable as of November 1, 2006 and also by failing or omitting to pay the installment which became due and payable each and every month thereafter, to the date hereof, although duly demanded.

8.     That the terms of the above described instruments provide: (1) that the whole of said principal sum and interest shall become due at the option of the Mortgagee after default in the payment of any installment of principal or of interest; (2) that upon any default the Mortgagor will pay to the Mortgagee any sums paid for taxes, charges, assessments, and insurance premiums upon said mortgaged premises; (3) that in case of sale under foreclosure, the premises may be sold in one parcel.

9.     Pursuant to the terms of said instrument[s] notice of default has been duly given to the defendants if required, and the period to cure, if any, has elapsed and by reason thereof, Plaintiff has elected and hereby elects to declare immediately due and payable the entire unpaid balance of principal.

10.     That the balance of principal due upon said note and mortgage as of the date of said default and as of the time of this Complaint is $318,501.57 plus interest from October 1, 2006.

11.    That in order to protect its security, plaintiff may be compelled during the pendency of this action to make repairs to, board, secure, protect and maintain the premises, to pay taxes, assessments, water rates, sewer rentals, insurance premiums, mortgage insurance premiums, if there be any, and other charges affecting the premises, and the plaintiff requests that any sum so paid be added to the sum otherwise due, with interest as provided in the aforesaid instruments, and be deemed secured by said instrument[s] and adjudged a valid lien on the premises hereinabove described.

12.    That the plaintiff requests that in the event this action proceeds to Judgment of Foreclosure and Sale, said premises be sold subject to covenants, restrictions and easements, prior mortgages and liens, and amendments, if any, of record; any state of facts an accurate survey may show; restrictions, regulations, ordinances and zoning ordinances of any municipal or governmental authority having jurisdiction thereof; and municipal, departmental and other governmental violations, if any, affecting the premises; and real estate taxes, sewer rents, water charges, if any, open of record.

13.    That a prior action was commenced at law or otherwise for the recovery of the sum or any part thereof secured by the said instrument[s], by filing a summons & complaint in the office of the clerk of Dutchess County, on October 24, 2005, bearing index #2005-5260, and by filing a summons & complaint in the office of the clerk of Dutchess County, on August 3, 2006, bearing index #2006-4354. Plaintiff will undertake to discontinue said actions.

14.    That the defendants all have or claim to have some interest in or lien[s] upon the said mortgaged premises, or some part thereof, which interest or lien[s], if any, has [have] accrued subsequently to the lien[s] of the said mortgage[s] or was in express terms or by law made subject thereto, or has [have] been duly subordinated thereunto.

15.    That the defendants "JOHN DOES" and "JANE DOES" may be tenants or may be in possession of the aforementioned premises, or may be corporations, other entities or persons who claim, or may claim, a lien against the premises.

16.    That the basis for naming any political subdivision, governmental agency or similar body, or the holder of a security interest in personal property, if any, is set forth as Exhibit "B".

WHEREFORE, plaintiff demands judgment that the defendants and all persons claiming under them subsequent to the filing of the Notice of Pendency of this action in the County of Dutchess may be forever barred and foreclosed from all right, title, claim, lien and equity of redemption in said mortgaged premises, and each and every part thereof; except the right of the United States of America and its political subdivision, if it or they be a party to this action, to redeem as provided for in the applicable laws; that the said premises may be decreed to be sold according to law; that the amount of principal due the plaintiff on said note and mortgage may be adjudged in the sum of $318,501.57 plus interest from October 1, 2006, and that from the money arising from the sale, plaintiff be paid the amount of $318,501.57 principal due it on said note and mortgage with interest and late charges that may be due and owing to the time of such

payment plus the expenses of sale and the costs and expenses of this action, together with any sum which may be paid by the plaintiff for repairs to, boarding, securing, protecting and maintaining the premises, taxes, charges, assessments and insurance premiums upon said mortgaged premises, with appropriate interest thereon so far as such moneys properly applicable thereto will pay the same; that the defendants STEVEN KOEHLER AKA STEVEN C. KOEHLER be adjudged to pay any deficiency which may remain; that a Receiver, upon plaintiff's application therefore, be forthwith appointed for said mortgaged premises for the benefit of the plaintiff, with all powers of receivers in such actions, and that the plaintiff have such other and further relief as may be just and proper in the premises, together with attorney's fees, costs and disbursements of this action.

Dated: February 9, 2007
      Plainview, New York


Danielle Mastriano, Esq.
**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Plaintiff
51 E. Bethpage Road
Plainview, NY 11803
516-741-2585

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK    )
                           ) ss:
COUNTY OF NASSAU    )

      Danielle Mastriano, Esq., the undersigned, an attorney duly admitted to practice law before the Courts of the State of New York, affirms under the penalty of perjury:

      That (s)he is an associate of ROSICKI, ROSICKI & ASSOCIATES, P.C., attorney of record for plaintiff in the above entitled action; that (s)he has read the foregoing Summons and Complaint and knows the contents thereof; that the same is true to affiant's knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters (s)he believes it to be true.

      The reason that this verification is made by the undersigned and not by plaintiff is because plaintiff maintains its principal place of business outside Nassau County; that being the County in which your affiant maintains an office for the practice of law.

      The grounds of deponent's belief as to all matters not stated upon deponent's knowledge are based upon the records of plaintiff in deponent's possession.

Dated: February 9, 2007
Plainview, New York

                                   Danielle Mastriano, Esq.

## Schedule A Description

Title Number **K040404**                                                Page    1

ALL that certain plot, piece or parcel of land, with the buildings and
improvements thereon erected, situate, lying and being in the Town of East
Fishkill, County of Dutchess and State of New York, bounded and described as
follows:

BEGINNING at a point on the East side of the Hamilton Road at the Northwest
corner of a parcel heretofore conveyed to Reinhold and Matilda Schimanke by
deed dated June 11th 1963 and recorded in the Dutchess County Clerk's Office
on July 8th 1963 in Liber 1104 of Deeds at page 530; Thence Along the East
side of Hamilton Road North 19 degrees 28' East 201.80 to land now or formerly
of Murphy; Thence Along lands now or formerly of Murphy South 70 degrees 32'
East 300 feet to a point; Thence along lands of the Grantor South 19 degrees 28'
West 201.80 feet to the Northeast corner of the lands of Schimanke; Thence
along lands of Shimanke North 70 degrees 32' West 300 feet to the point or
place of BEGINNING.

Index No.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS
-----------------------------------------------------------------------
WELLS FARGO BANK, NA AS TRUSTEE UNDER
POOLING AND SERVICING AGREEMENT DATED AS OF
FEBRUARY 1, 2005 ASSET BACKED PASS-THROUGH
CERTIFICATES SERIES 2005 WHQ1,

                                        Plaintiff,

        -against-


STEVEN KOEHLER AKA STEVEN C. KOEHLER , et al.,

                                        Defendants.
-----------------------------------------------------------------------

---

### SUMMONS AND VERIFIED COMPLAINT

---

**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Plaintiff
51 E. Bethpage Road
Plainview, NY 11803
516-741-2585
516-622-9434
RR&A #:  07-003174

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT <u>SOUTHERN</u> DISTRICT OF <u>NEW YORK</u> | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Steven Koehler | Case Number: 08-35493 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property): Wells Fargo Bank, NA as Trustee | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>Rosicki, Rosicki & Associates P.C.<br>51 East Bethpage Road, Plainview, NY 11803<br><br>Telephone Number: 516-741-2585 | **Court Claim Number:**<br>*(If known)*<br><br>Filed on: |
| Name and address where payment should be sent (if different from above):<br>Barclays Capital Real Estate Inc. dba HomEq Cash Control - CA 3358 - 4837 Watt Avenue, Suite 200 North Highlands, CA 95660  *Telephone number:* 516-741-2585<br><br>Telephone Number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:**      $378,790.67<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☒ Check this box if claim includes interest or other charges in addition to the principle amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the follwing categories, check the box and state the amount.**<br><br>Specify the priority of the claim:<br><br>☐ Domestic support obligations under 11 U.S C § 507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:**_____Mortgage Note_____<br>     (See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S C § 507(a)(4) |
| **3. Last four digits of any number by which creditor identifies debtor:** <u>9326</u><br><br>     **3a. Debtor may have scheduled account as:** _____<br>         (see instruction #3a on reverse side.) | |
| **4. Secured Claim** (see instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>   **Nature of property or right of setoff:** ☒ Real Estate  ☐ Motor Vehicle  ☐ Other<br>   Describe:<br><br>   **Value of Property:** $_____ **Annual Interest Rate** ___%<br><br>   **Amount of arrearage and other charges as of time case filed included in secured claim,**<br><br>   **if any:** $ <u>67,000.93</u>  **Basis for perfection:** _____<br><br>   **Amount of Secured Claim:** $<u>378,790.67</u>  **Amount Unsecured:** $ _____ | ☐ Contributions to an employee benefit plan - 11 U.S.C § 507(a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property Or services for personal, family, or household use - 11 U.S.C § 507(a)(7).<br><br>☐ Taxes or penalties owed to governmental units - 11 U.S C § 507(a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C § 507(a)(___). |
| **6. Credits:**  The amount of all payments on this claim has been credited for the purpose of making this proof of claim | **Amount entitled to priority:** |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | $_____<br><br>* Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| | | |
|---|---|---|
| Date:04/29/2008 | **Signature**: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor of other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>/s/ Andrew Goldberg, Esq.<br>Attorney for Claimant | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

LOAN# 9326

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK
## POUGHKEEPSIE DIVISION

-----------------------------------------------x          Chapter 13
In re:                                                    Case No. 08-35493
Steven Koehler
    Debtor(s)
-----------------------------------------------x

## **EXHIBIT A**

ITEMIZATION OF CLAIM

### **Total Claim as of March 17, 2008**

| | |
|---|---|
| -Principal Balance | $318,295.09 |
| -Interest | $40,739.08 |
| -Late Charge(s)/NSF Fee(s)/Phone Check(s) | $ 119.62 |
| -Pre-Petition Attorney Fees and Costs | $3,543.85 |
| -Prior Bankruptcy Fees and Costs | $1,595.00 |
| -Pre-Petition Escrow Advances | $14,239.53 |
| -Other amounts for Appraisal Fees, and Other Charges, etc. | $ 258.50 |
| TOTAL CLAIM | $ 378,790.67 |

### **Total Arrearage as of March 17, 2008**

-Regular Monthly Installments through March 1, 2008          $61,483.96
Payments From  12/01/2006  To   01/01/2008          3,793.04 Per Month
               02/01/2008  To   03/01/2008          4,190.70 Per Month

| | |
|---|---|
| -Late Charge(s)/NSF Fee(s)/Phone Check(s) | $ 119.62 |
| -Pre-Petition Attorney Costs | $3,543.85 |
| -Prior Bankruptcy Fees and Costs | $1,595.00 |
| -Other amounts for Appraisal Fees, and Other Charges, etc. | $ 258.50 |
| TOTAL ARREARAGE | $67,000.93 |
| Next post Petition Payment Amount | $3,517.49 |

Claimant may be entitled, and reserves the right, to charge Debtor(s)' account pursuant to the loan documents for all amounts which are collectible after the bankruptcy petition date, including, but not limited to: regular monthly installments; applicable interest and/or escrow charges; applicable late charges; and reasonable attorney's fees and costs incurred by Claimant in connection with the instant bankruptcy case such as preparation and filing of notice of appearance, review of plan, preparation and filing of proof of claim, preparation and filing of objection to confirmation, motions for relief from the automatic stay, and attendance at hearings relating to the foregoing.

**Please forward all payments to:**
**U.S. Mail:**
HomEq Servicing Default Cash / Suite 200 4837 Watt Ave. North Highlands, CA 95660
**Overnight payments:**
Barclays Capital Real Estate Inc. dba HomEq Cash Control - CA 3358 - 4837 Watt Avenue, Suite 200
North Highlands, CA 95660
**Please forward all correspondence and court pleadings to:**
Rosicki, Rosicki & Associates, P.C., 51 E. Bethpage Road, Plainview, N.Y. 11803



Loan Number: 0068150234 - 9604

## ADJUSTABLE RATE NOTE

### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| December 13, 2004 | White Plains | NY |
|---|---|---|
| [Date] | [City] | [State] |

25 HAMILTON ROAD, HOPEWELL JUNCTION, NY 12533
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 322,500.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is  Argent Mortgage Company, LLC .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  8.990 %. This interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on  February 1, 2005 .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on January 1, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my payments at:  505 City Parkway West, Suite 100,  Orange, CA 92868

or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $  2,592.59 . This amount may change.

#### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (A) Change Dates

The interest rate I will pay may change on the first day of  January, 2008 , and on that day every  sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

#### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

#### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **six** percentage point(s) ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

201-1NY (Rev. 07/03)

Initials: SK
12/10/2004 1:16:03 PM

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.990 %  or less than 8.990 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) ( **1.000 %**) from the rate of interest I have been paying for the preceding  six months.  My interest rate will never be greater than **14.990 %** or less than **8.990 %**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  PREPAYMENT PRIVILEGE**

I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section without incurring a prepayment charge.  A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Application of Funds**

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(B) Monthly Payments**

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me.  If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be **2.000 %** of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.  The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

201-2NY (Rev.07/03)

Initials: _____

12/10/2004 1:18:03 PM

Loan Number:  0068150234 - 9604

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note.  That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption.  Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12.  GOVERNING LAW PROVISION**

This Note and the related Security Interest are governed by Federal and State law applicable to the jurisdiction of the Property.

**Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable.  This written agreement contains all the terms the Borrower(s) and the Lender have agreed to.  Any subsequent agreement between us regarding this Note or the Instrument which secures this Note, must be in a signed writing to be legally enforceable.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)            _____ (Seal)
Borrower  STEVEN KOEHLER                                     Borrower


_____ (Seal)            _____ (Seal)
Borrower                                                                 Borrower

201-3NY (Rev. 07/03)                                3 of 3                                12/10/2004 1:16:03 PM

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------x          Chapter 13
In re:                                                      Case No. 08-35493
Steven Koehler
    Debtor(s)                          **PROOF OF CLAIM**
-------------------------------------------------x


# **PROOF OF CLAIM**


### ROSICKI, ROSICKI & ASSOCIATES, P.C.
Outsource Management Department
Main Office: 51 E. Bethpage Road
Plainview, New York 11803
Telephone (516) 741-2585

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------x
In re:

Steven Koehler
   Debtor(s)
-----------------------------------------------x

Chapter 13
Case No. 08-35493

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK)
COUNTY OF NASSAU ) ss:

     Wendy Sinrilus, being duly sworn, deposes and says:

     I am not a party to this action, am over 18 years of age and reside in Nassau County, New York.

     On April 29, 2008, I served the Proof of Claim, by depositing a true copy thereof in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following persons at the last known address set forth after each name:

Michael H. Schwartz, Esq.
Attorney for Debtor(s)
One Water Street
White Plains, NY 10601

Jeffrey L. Sapir, Esq.
Trustee
399 Knollwood Road, Suite 102
White Plains, NY 10603

                      /s/ Wendy Sinrilus
                      Wendy Sinrilus

Sworn to before me this
April 29, 2008
/s/ Betsy P. Tarr
NOTARY PUBLIC

                    BETSY P. TARR
                    NOTARY PUBLIC, State of New York
                    No. 01TA6000083
                    Qualified in Nassau County
                    Commission Expires December 8, 2009

DebtEd, MDisCs, CLOSED

## U.S. Bankruptcy Court
### Southern District of New York (Poughkeepsie)
### Bankruptcy Petition #: 07-36089-cgm

*Assigned to:* Cecelia G. Morris
Chapter 13
Voluntary
Asset

*Date Filed:* 07/20/2007
*Date Terminated:* 01/18/2008
*Date Dismissed:* 01/17/2008

*Debtor*
**Steven Koehler**
25 Hamilton Road
Hopewell Junction, NY 12533
SSN: xxx-xx-5188

represented by **Michael H. Schwartz**
Michael H. Schwartz &
Associates, P.C.
One Water Street
White Plains, NY 10601
(914) 997-0071
Fax : (914) 997-0536
Email: mhs@mhspc.com

*Trustee*
**Jeffrey L. Sapir-13**
As Chapter 13 and 12 Trustee
399 Knollwood Road
Suite 102
White Plains, NY 10603
(914) 328-6333

represented by **Jeffrey L. Sapir-13**
As Chapter 13 and 12 Trustee
399 Knollwood Road
Suite 102
White Plains, NY 10603
(914) 328-6333
Fax : (914) 328-7299
Email: info@sapirch13tr.com

*U.S. Trustee*
**United States Trustee**
74 Chapel Street
Albany, NY 12207
(518) 434-4553

| Filing Date | # | Docket Text |
|---|---|---|
| 07/20/2007 | 1 | Voluntary Petition (Chapter 13). Order for Relief Entered. Filed by Michael H. Schwartz of Michael H. Schwartz & Associates, P.C. on behalf of Steven Koehler. (Schwartz, Michael) (Entered: 07/20/2007) |
| 07/20/2007 | 2 | Chapter 13 Plan filed by Michael H. Schwartz on behalf of Steven Koehler. (Schwartz, Michael) (Entered: 07/20/2007) |
| 07/20/2007 | 3 | Chapter 13 Statement of Current Monthly and Disposable Income (Form 22C) filed by Michael H. Schwartz on behalf of Steven Koehler. (Schwartz, Michael) (Entered: 07/20/2007) |

| 07/20/2007 | 4 | Certificate of Credit Counseling, Certificate Number: 02114-nys-cc-002224259 filed by Michael H. Schwartz on behalf of Steven Koehler. (Schwartz, Michael) (Entered: 07/20/2007) |
| 07/20/2007 |   | Receipt of Voluntary Petition (Chapter 13)(07-36089) [misc,1161] ( 274.00) Filing Fee. Receipt number 4345572. Fee amount 274.00. (U.S. Treasury) (Entered: 07/20/2007) |
| 07/23/2007 |   | Judge Cecelia G. Morris added to the case. (Cerino, Cheryl). (Entered: 07/23/2007) |
| 07/23/2007 |   | Trustee Jeffrey L. Sapir-13 added to the case. (Cerino, Cheryl). (Entered: 07/23/2007) |
| 07/24/2007 | 5 | Chapter 13 341(a) Notice with 341(a) meeting to be held on 8/22/2007 at 11:00 AM at UST office (Pough). with Confirmation hearing to be held on 10/2/2007 at 01:30 PM at Poughkeepsie Office - 355 Main Street Last day to object to dischargeability of a debt is 10/22/2007. Last day to Object to Confirmation 9/24/2007, Proof of Claims due by 11/20/2007, (Cerino, Cheryl). (Entered: 07/24/2007) |
| 07/26/2007 | 6 | Notice of 341(a) Meeting of Creditors with Certificate of Mailing. (related document(s) (Related Doc # 5)) . Service Date 07/26/2007. (Admin.) (Entered: 07/27/2007) |
| 08/15/2007 | 7 | Notice of Appearance filed by Andrew Goldberg on behalf of Barclays Capital Real Estate Inc. dba HomEq Servicing. (Goldberg, Andrew) (Entered: 08/15/2007) |
| 08/21/2007 | 8 | Objection to Confirmation of Plan (related document(s)2) filed by Richard Postiglione on behalf of Barclays Capital Real Estate Inc. dba HomEq Servicing. (Postiglione, Richard) (Entered: 08/21/2007) |
| 08/21/2007 |   | Notice of Hearing *to consider the Objection to Confirmation of Plan filed on behalf of Wells Fargo, NA as Trustee* filed by Clerk of the Court. with hearing to be held on 10/2/2007 at 01:30 PM at Poughkeepsie Office - 355 Main Street (Fredericks, Frances) (Entered: 08/21/2007) |
| 08/23/2007 |   | Notice of Continuance of First Meeting of Creditors on 9/26/2007 at 08:30 AM at UST office (Pough) (Sapir-13, Jeffrey) (Entered: 08/23/2007) |
| 09/19/2007 |   | Notice RESCHEDULING the Confirmation Hearing and any objection thereto currently scheduled to be heard on 10/2/2007 at 01:30 PM to 10/2/2007 at 01:00 PM at Poughkeepsie Office - 355 Main Street (Fredericks, Frances). (Entered: 09/19/2007) |

| 10/02/2007 | | Notice of Adjournment of Confirmation Hearing; Hearing held and adjourned to 12/11/2007 at 01:30 PM at Poughkeepsie Office - 355 Main Street (Fredericks, Frances). (Entered: 10/09/2007) |
|---|---|---|
| 10/02/2007 | | Notice of Adjournment of Hearing Re: Objection to Confirmation filed on behalf of Wells Fargo, NA as Trustee; Hearing held and adjourned to 12/11/2007 at 01:30 PM at Poughkeepsie Office - 355 Main Street (Fredericks, Frances). (Entered: 10/09/2007) |
| 11/30/2007 | 9 | Motion for Relief from Stay *on Presentment for 12/20/2007 at 09:30 AM* filed by Barbara Dunleavy on behalf of Wells Fargo Bank, NA, as Trustee. Responses due by 12/14/2007. (Attachments: # 1 Exhibit Exhibit A# 2 Cover Letter# 3 Cover Sheet# 4 Affidavit of Service) (Dunleavy, Barbara) Modified on 12/3/2007 to remove hearing date and add presentment information (Colon, Gwen). (Entered: 11/30/2007) |
| 11/30/2007 | | Receipt of Motion for Relief from Stay (fee)(07-36089-cgm) [motion,185] ( 150.00) Filing Fee. Receipt number 4536731. Fee amount 150.00. (U.S. Treasury) (Entered: 11/30/2007) |
| 11/30/2007 | 10 | Memorandum of Law (related document(s)9) filed by Barbara Dunleavy on behalf of Wells Fargo Bank, NA, as Trustee. (Dunleavy, Barbara) (Entered: 11/30/2007) |
| 11/30/2007 | 11 | Affidavit (related document(s)9) filed by Barbara Dunleavy on behalf of Wells Fargo Bank, NA, as Trustee. (Dunleavy, Barbara) (Entered: 11/30/2007) |
| 11/30/2007 | 12 | Affidavit *Rule 55* (related document(s)9) filed by Barbara Dunleavy on behalf of Wells Fargo Bank, NA, as Trustee. (Dunleavy, Barbara) (Entered: 11/30/2007) |
| 12/11/2007 | | Notice of Adjournment of Hearing Re: Confirmation Hearing Held & adjourned to 1/15/2008 at 01:30 PM at Poughkeepsie Office - 355 Main Street (Cerino, Cheryl). (Entered: 12/12/2007) |
| 12/11/2007 | | Notice of Adjournment of Hearing Re: Objection to Confirmation of Plan filed on behalf of Wells Fargo NA; Hearing Held & adjourned to 1/15/2008 at 01:30 PM at Poughkeepsie Office - 355 Main Street (Cerino, Cheryl). (Entered: 12/12/2007) |
| 12/17/2007 | 13 | Motion to Dismiss Case filed by Jeffrey L. Sapir-13 on behalf of Jeffrey L. Sapir-13. with hearing to be held on 1/15/2008 at 02:00 PM at Poughkeepsie Office - 355 Main Street (Sapir-13, Jeffrey) (Entered: 12/17/2007) |
| | | |

| 12/19/2007 | 14 | Affidavit *in Opposition* (related document(s)9) filed by Michael H. Schwartz on behalf of Steven Koehler. (Schwartz, Michael) (Entered: 12/19/2007) |
|---|---|---|
| 12/26/2007 | | Notice of Hearing *to consider the Motion for Relief from Stay filed on behalf of Wells Fargo Bank, NA, as Trustee and opposition thereto* (related document(s)9, 14) filed by Clerk of the Court. with hearing to be held on 1/8/2008 at 09:30 AM at Poughkeepsie Office - 355 Main Street (Fredericks, Frances) (Entered: 12/26/2007) |
| 12/26/2007 | 15 | Affidavit *in Opposition to Motion to Dismiss* (related document(s)13) filed by Michael H. Schwartz on behalf of Steven Koehler with hearing to be held 1/15/2008 at 02:00 PM at Poughkeepsie Office - 355 Main Street. (Schwartz, Michael) Modified on 12/26/2007 to add hearing information (Fredericks, Frances). (Entered: 12/26/2007) |
| 01/08/2008 | | Notice of Adjournment of Hearing (related document(s)9) RE: Motion for Relief from Stay filed by Wells Fargo Bank, NA, as Trustee; hearing held and adjourned to 2/5/2008 at 09:30 AM at Poughkeepsie Office - 355 Main Street (Colon, Gwen). (Entered: 01/09/2008) |
| 01/08/2008 | | Notice of Adjournment of Hearing RE: Opposition by debtor to the Motion for Relief from Stay filed by Wells Fargo Bank, NA, as Trustee; hearing held and adjourned to 2/5/2008 at 09:30 AM at Poughkeepsie Office - 355 Main Street (Colon, Gwen). (Entered: 01/09/2008) |
| 01/08/2008 | | Notice of Adjournment of Hearing Re: Motion to dismiss case by trustee; Hearing Held & adjourned to 1/15/2008 at 01:30 PM at Poughkeepsie Office - 355 Main Street (Cerino, Cheryl). (Entered: 01/10/2008) |
| 01/15/2008 | | Pending Deadlines Terminated. Re: Motion to Dismiss Case by trustee; Hearing Held, Motion Granted. Order to be Submitted. (Confirmation Hearing & Objection to Plan MOOT). (Cerino, Cheryl). (Entered: 01/16/2008) |
| 01/17/2008 | 16 | Order Granting Motion To Dismiss Case For Failure to Make Plan Payments (Related Doc # 13) signed on 1/17/2008. (LaChappelle, Jennifer) (Entered: 01/17/2008) |
| 01/17/2008 | 17 | Request for Order of Final Decree (LaChappelle, Jennifer). (Entered: 01/17/2008) |
| 01/18/2008 | | Case Closed. (LaChappelle, Jennifer). (Entered: 01/18/2008) |
| | | |

| 01/19/2008 | 18 | Certificate of Mailing Re: Order to Dismiss. (related document(s) (Related Doc # 16)) . Service Date 01/19/2008. (Admin.) (Entered: 01/20/2008) |
|---|---|---|
| 01/19/2008 | 19 | Order of Final Decree with Certificate of Mailing. (related document(s) (Related Doc # 17)) . Service Date 01/19/2008. (Admin.) (Entered: 01/20/2008) |
| 03/20/2008 | 20 | Chapter 13 Trustee's Final Report and Account . (Sapir-13, Jeffrey) (Entered: 03/20/2008) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/13/2008 10:18:46 | | | |
| **PACER Login:** | ms0061 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 07-36089-cgm Fil or Ent: filed From: 4/29/2006 To: 5/13/2008 Doc From: 0 Doc To: 99999999 Format: HTML |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

B10 ( Official Form 10) (04/07)

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Steven Koehler | Case Number: 07-36089 |
|---|---|

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor Owes money or property): Barclays Capital Real Estate Inc, dba HomEq Servicing as servicing agent for Wells Fargo Bank, NA as Trustee

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach a copy of statement giving particulars.

Name and address where notices should be sent:
Barclays Capital real estate Inc. dba Homeq Servicing
Attn. Default Servicing, 701 Corporate Center Drive
Raleigh, North Carolina 27607
Telephone number: 516-741-2585

☐ Check box if you have never received any notices from the bankruptcy court in this case

☐ Check this box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Last four digits of accounts or other number by which creditor Identifies debtor: 9326

Check Here    ☐ replaces
If this claim    ☐ amends    A previously filed claim, dated:

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☒ Money loaned

☐ Personal injury/wrongful death
☐ Taxes
☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Other _____

☐ Wages, salaries, and compensation (fill out below)
Last four digits of your SS # _____
Unpaid compensation for services performed
From _____ to _____

**2. Date debt was incurred: 12/17/2004**

**3. If court judgment was obtained:**

**4. Classification of claim.** Check the appropriate box or boxes that best describe tour claim and state the amount of the claim at the time the case was filed.
See reverse side for important explanations.

Unsecured Nonpriority Claim $ _____

☐ Check this box if: a) there is no collateral or lien securing your claim, or b)
Your claim exceeds the value of the property securing it, or c) none or only part
Of your claim is entitled to priority

**Secured Claim**

☒ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☒ Real Estate          ☐ Other _____
☐ Motor Vehicle

Value of Collateral: $_____

Unsecured Priority Claim

☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $_____

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950),* earned within 180 days
Before filing of the bankruptcy petition or cessation of the debtor's business,
Whichever is earlier - 11 U.S.C § 507(a)(4)

☐ Contributions to an employee benefit plan - 11 U.S.C § 507(a)(5).

Amount of arrearage and other charges at time case filed included in secure claim, if any: $39,750.01

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property
Or services for personal, family, or household use – 11 U.S.C § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C § 507(a)(___).

* Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with
Respect to cases commenced on or after the date of adjustment.

5.    Total Amount of Claim at Time Case Filed:    $_____    $351,880.23    $_____    $351,880.23
                                                                      (unsecured)    (Secured)    (Priority)    (Total)
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges

6.    **Credits:** The amount of all payments on this claim has been deducted from the purpose of making this proof of claim

7.    **Supporting Documents** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized
Statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT
SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary

8.    **Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self addressed envelope and
copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date
August 15, 2007 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim ( attach copy Of power of attorney, if any): /s/Andrew Goldberg, Esq.
Attorney for Claimant |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

LOAN# 9326

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK
## POUGHKEEPSIE DIVISION

-------------------------------------------------x

In re:

Steven Koehler

    Debtor(s)

-------------------------------------------------x

Chapter 13

Case No. 07-36089

### EXHIBIT A

ITEMIZATION OF CLAIM

**Total Claim as of July 20, 2007**

| | |
|---|---|
| -Principal Balance | $318,501.57 |
| -Interest | $23,367.68 |
| -Late Charge(s)/NSF Fee(s)/Phone Check(s) | $414.80 |
| -Pre-Petition Attorney Fees and Costs | $4,516.77 |
| -Pre-Petition Escrow Advances | $4,453.16 |
| -Other amounts for Appraisal Fees, and Other Charges, etc. | $626.25 |
| TOTAL CLAIM | $ 351,880.23 |

**Total Arrearage as of July 20, 2007**

| | |
|---|---|
| -Regular Monthly Installments through July 1, 2007 | $34,192.19 |
| -Late Charge(s)/NSF Fee(s)/Phone Check(s) | $414.80 |
| -Pre-Petition Attorney Fees and Costs | $4,516.77 |
| -Other amounts for Appraisal Fees, and Other Charges, etc. | $626.25 |
| TOTAL ARREARAGE | $39,750.01 |

| Anticipated Post Petition Expenses not included in the Proof of Claim | |
|---|---|
| POC Preparation Fee | $100 |
| Plan Review Fee | $150 |
| BPO | $100 |

Subject to bankruptcy court approval, claimant may be entitled, and reserves the right, to charge Debtor(s)' account pursuant to the loan documents for all amounts which are collectible after the bankruptcy petition date, including, but not limited to: regular monthly installments; applicable interest and/or escrow charges; applicable late charges; and reasonable attorney's fees and costs incurred by Claimant in connection with the instant bankruptcy case such as preparation and filing of notice of appearance, review of plan, preparation and filing of proof of claim, preparation and filing of objection to confirmation, motions for relief from the automatic stay, and attendance at hearings relating to the foregoing.

**Please forward all payments to:**
**U.S. Mail:**
HomEq Servicing Default Cash / Suite 200 4837 Watt Ave. North Highlands, CA 95660
**Overnight payments:**
Barclays Capital Real Estate Inc. dba HomEq Cash Control - CA 3358 - 4837 Watt Avenue, Suite 200
North Highlands, CA 95660
**Please forward all correspondence and court pleadings to:**
Rosicki, Rosicki & Associates, P.C., 51 E. Bethpage Road, Plainview, N.Y. 11803

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x                    Chapter 13
In re:                                                               Case No. 07-36089
Steven Koehler
   Debtor(s)                                          **AFFIDAVIT OF SERVICE**
------------------------------------------------x
STATE OF NEW YORK)
COUNTY OF NASSAU ) ss:

     Wendy Sinrilus, being duly sworn, deposes and says:

     I am not a party to this action, am over 18 years of age and reside in Suffolk County,

New York.

     On August 15, 2007, I served the Proof of Claim, by depositing a true copy thereof in a

post-paid wrapper, in an official depository under the exclusive care and custody of the U.S.

Postal Service within New York State, addressed to each of the following persons at the last

known address set forth after each name:

Michael H. Schwartz, Esq.
Attorney for Debtor(s)
One Water Street
White Plains, NY 10601

Jeffrey L. Sapir, Esq.
Trustee
399 Knollwood Road, Suite 102
White Plains, NY 10603

                                   /s/ Wendy Sinrilus
                                   Wendy Sinrilus

Sworn to before me on
  15th day of August, 2007
/s/ Betsy P. Tarr
NOTARY PUBLIC

                                   BETSY P. TARR
                                   NOTARY PUBLIC, State of New York
                                   No. 01TA6000083
                                   Qualified in Nassau County
                                   Commission Expires December 8, 2009

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------x

In re:

Steven Koehler

   Debtor(s)

-------------------------------------------------x

Chapter 13

Case No. 07-36089

**PROOF OF CLAIM**

---

**PROOF OF CLAIM**

---

ROSICKI, ROSICKI & ASSOCIATES, P.C.
Outsource Management Department
Main Office: 51 E. Bethpage Road
Plainview, New York 11803
Telephone (516) 741-2585

Docket No.:  08-35493
Adv Proc No.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

In Re:

**Steven Koehler,**

                          Debtor(s),
--------------------------------------------------------------------------
**Steven Koehler,**

                          **Plaintiff,**

                          **-against-**

**Wells Fargo Bank, NA, as Trustee for Barclays Capital Real Estate, Inc.,
d/b/a HomEq Cash Control,**

                          **Defendant(s).**

_____

**COMPLAINT**

_____

**Michael H. Schwartz & Associates P.C.
1 Water Street
White Plains, New York 10601
(914) 997-0071**

_____